UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No.:  06-042-02 (JDB)** |
| | : | |
| **v.** | : | |
| | : | |
| **PHITO CAJUSTE,** | : | |
| | : | |
| **Defendant.** | : | |

GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE BASED UPON
DEFENDANT'S SUBSTANTIAL ASSISTANCE TO THE GOVERNMENT[1]

The United States of America, by its attorney, the United States Attorney for the District of

Columbia, respectfully submits this motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.

Those provisions authorize the Court, upon motion of the government, to impose a sentence below

the sentence otherwise applicable under the United States Sentencing Guidelines (U.S.S.G.).  The

defendant is subject to a sentencing guidelines range of 235-293 months based on his total offense

level of 38, which level includes a three-point reduction for acceptance of responsibility.  The United

States submits this motion based on the substantial assistance which the defendant has rendered in

the investigation and prosecution of other persons.  The United States submits this motion because

defendant rendered "substantial assistance" in the prosecution of his co-defendants and therefore is

entitled to a downward sentencing departure from his sentencing guidelines range.

**I.  Procedural History**

While defendant Phito Cajuste was charged at a later date than his coconspirators, Yves Jean

---

[1] While often motions for downward departure based on substantial assistance are filed
under seal, because all the previous proceedings in this matter have not been sealed the
government does not file this motion under seal.

Louis and Ernso Louis, it is instructive to review the history of the matter chronologically.  On October 7, 2005, the grand jury returned an indictment charging Yves Jean Louis and Ernso Louis with violations of 18 U.S.C. § 1203, Hostage Taking of a United States citizen, in connection with their offenses in abducting and holding for ransom a nine-year old American girl on September 26, 2005, and continuing thereafter to October 4, 2005 in the Republic of Haiti, within the extraterritorial jurisdiction of the United States, and, pursuant to 18 U.S.C. § 3238, within the venue of the United States District Court for the District of Columbia.  On December 16, 2005, in case 05-376-01, 02 (JDB), Yves Jean Louis and Ernso Louis each pleaded guilty to one count of hostage-taking  in violation of 18 U.S.C. § 1203, with cooperation provisions.

On February 15, 2006, the grand jury indicted defendants Phito Cajuste and Lesley Merise for hostage-taking, in a related separate case concerning the same crime.   On May 4, 2006, Phito Cajuste entered a guilty plea in case 06-042-02 (JDB) to one count of hostage-taking, with a cooperation provision.   On about February 24, 2007, Merise was arrested in Haiti and waived extradition.  Merise pleaded guilty to hostage taking in case 06-042-01 (JDB) on August 31, 2007.

## II.  The Facts

On September 26, 2005, at approximately 2 a.m., defendant Phito Cajuste and the three other hostage-takers invaded the home of O.G., located in the Route des Freres section of Port au Prince, Haiti.  O.G. had been asleep in the home she occupied with her parents.  O.G. was  a nine-year-old girl and is a citizen of the United States, having been born in Boston, Massachusetts in 1995.

Defendant Cajuste and the other hostage-takers had advance knowledge of the layout of the house from coconspirator Yves Jean Louis, who by virtue of his past employment by the family of O.G., was able to convey detailed information to the three other hostage-takers concerning the

2

physical layout of the house.  Yves Jean Louis, who was also a distant relative of the mother of O.G.,

was angry at the family of O.G..  Yves Jean Louis believed that they had underpaid him in his

employment and that they had promised him other financial rewards and then declined to provide

him with further funds or items of value, thus providing a motive for the hostage-taking.

Upon entry on the property, Yves Jean Louis distracted the dogs on the property by giving

them food.  While Yves Jean Louis was keeping the dogs occupied, defendants Merise, Phito Cajuste

and Ernso Louis entered the home through a previously unlocked entrance.  Having fed the dogs,

Yves Jean Louis rejoined the others in the house.  The four hostage-takers wore masks.  Armed with

machetes and a fake gun, the group proceeded  to the bedroom of the parents of O.G..  Once in the

bedroom, defendants Merise, Cajuste, and Ernso Louis bound the father to prevent him from

moving.  One of the hostage-takers pointed a fake gun at the father of O.G.[2]  The hostage-takers

bound the mother as well.  The hostage-takers stole approximately one thousand US dollars in local

currency, a watch and a pair of athletic shoes.

Next, the hostage-takers went to the room where O.G. was sleeping.  They covered the mouth

of O.G., picked her up and carried her out of the house, without waking any of the siblings.  The

hostage-takers had started to tape O.G.'s mouth shut, but O.G. explained that she would die if they

did that because she could not breathe through her nose.  O.G. suffers from asthma and a heart

condition.  They threatened O.G. during the abduction that they would kill her if she did not stay

quiet.  The hostage-takers also pointed the fake gun at O.G.'s head to threaten her.  Merise and the

other hostage-takers stole O.G.'s father's car and drove it away as the getaway car.  After the

---

[2]  The accounts of the hostage-takers are not consistent on who wielded the fake gun.  It
appears likely different conspirators had it at different times.

abduction, a face mask was located at the perimeter of the home. Ropes were recovered after having been cut from the wrists of the parents. A machete was located on the property which had not been there prior to the crime.

The hostage-takers then took O.G. to a location and held her there until approximately 10 p.m. that night. While at that location, although she was blindfolded for much of the time, O.G. heard clearly the voice of defendant Yves Jean Louis. It began to storm. The structure at this location was a shack that had little protection from the elements. The hostage-takers decided to move O.G. to another location.

Two of the hostage-takers, Merise and Ernso Louis, next moved O.G. to a mountainous remote location, accessible only hiking on foot over rough terrain for several hours, in the Ghantier area of Haiti. O.G. sustained scrapes and scratches during the trips. They held O.G. hostage in an abandoned animal shed in an isolated area. O.G. became physically ill from the inadequate and unsafe food and water. Large dangerous insects infested the shed where O.G. was held. O.G. was distraught and cried frequently.

Over a period of days, Merise and other hostage-takers proceeded to make ransom demands of O.G.'s family by telephone. Merise was the chief ransom negotiator. Cajuste also made at least one ransom call. The initial demand was $200,000 in U.S. currency. Over the course of the negotiations, which occurred by telephone, the demand amount was eventually lowered to $50,000. The family tried to raise the money but could come up with only an amount of approximately $8,000. The hostage-takers would not accept that low an amount.

Ernso Louis stayed in a nearby building and cared for O.G. Other hostage-takers returned as needed to that location to put O.G. on the phone to show proof of life during the ransom

4

negotiations.   The hostage-takers repeatedly told O.G. that if she made too much noise, tried to leave, or told anyone that she had been kidnaped, she and her family would be killed.   After a number of days, defendant Ernso Louis decided to permit O.G. to go outside to play in the nearby area.

A young adult shepherd who resided in the area noticed the arrival of the new child and befriended her.  That shepherd engaged O.G. in conversation and established a level of trust with her. That shepherd eventually learned from O.G. that she had been kidnaped.  Taking a piece of charcoal from an old fire pit, the shepherd persuaded O.G. to write on a scrap of paper the name of her father and her telephone number.

Through great effort and crossing miles of very rough terrain, the shepherd managed to get to a police station to provide the authorities with this information.  Because of the lack of resources and of telecommunications infrastructure, the shepherd had to travel and labor for more than two days to get to the proper authorities to relay the name and number the child had written in charcoal on the scrap of paper.  In light of the situation, the authorities decided that the best approach was for that shepherd to return to the scene and arrange a way for O.G. to go outside where the authorities would wait.  On October 4, 2005, the law enforcement team climbed up the mountain for the rescue effort.  The shepherd entered the area and went to the house where Ernso Louis was staying.  The shepherd entered the house and engaged Ernso Louis in conversation to distract him until an opportunity arose to signal O.G. to go outside.  When the shepherd signaled her, O.G. bolted. Outside, law enforcement, including the Haitian National Police ("HNP") and the United Nations Civil Police ("UN CivPol"), was waiting.  Then law enforcement entered the building where Ernso Louis was inside and detained him.  O.G. was ill and had to hospitalized for a number of days after

her rescue. O.G. had a fever, was dehydrated and had poor kidney function.

After the O.G. was rescued, the locations where she had been held and where Ernso Louis was found were searched. A real-looking imitation handgun and a glove were found there. Ernso Louis was found in possession of the athletic shoes as well as a binder and a wallet belonging to O.G.'s father, all of which had been stolen from O.G.'s house the night of the kidnaping.

Agents of the FBI spoke with O.G., as well as members of her family. O.G. informed them that she knew the identity of one of her kidnappers. O.G. related that, although she had been blindfolded for much of the ordeal, she clearly recognized the voice of Yves Jean Louis. O.G. was familiar with his voice from having heard it when he worked at her family's home. The family of O.G. provided some identifying data and law enforcement was able to locate defendant Yves Jean Louis.

Yves Jean Louis was positively identified by O.G. after she reviewed a stack of photographs of men. Upon observing a photograph of Yves Jean Louis, O.G. identified him by name as a member of the group that kidnaped her and held her hostage. Ernso Louis was positively identified by O.G. after she reviewed a stack of photographs of men. Upon observing a photograph of Ernso Louis, O.G. identified him by name as a member of the group that kidnaped her and held her hostage.

Yves Jean Louis was apprehended by law enforcement at his home a few days later. The FBI interviewed Yves Jean Louis and he gave a statement confessing to his participation in the kidnaping and hostage-taking. Yves Jean Louis also implicated his coconspirators including Merise, Ernso Louis and Cajuste. Yves Jean Louis subsequently identified Cajuste from a photo array. The FBI interviewed Ernso Louis, who gave a statement confessing to his participation in the kidnaping and

hostage-taking. Ernso Louis also implicated his coconspirators, Merise, Cajuste and Yves-Jean Louis. Ernso Louis later identified Cajuste from a photo array. On December 16, 2005, in case 05-376, Yves Jean Louis and Ernso Louis each pleaded guilty to one count of hostage-taking in violation of 18 U.S.C. § 1203.

Defendant Cajuste was subsequently arrested in Haiti. On January 29, 2006, two agents of the FBI interviewed Cajuste at the prison in Port au Prince, Haiti. Cajuste related that Merise and Yves Jean Louis approached him and asked him to take part in their plot to kidnap "Olivia" and take her to the top of a mountain to hold her for ransom. Cajuste had been acquainted with the Merise for about four years. Merise offered him payment of approximately $ 8,000 U.S. dollars for his part in the kidnaping. Cajuste admitted to the FBI that he went to the house with the others, that he was armed with a machete and wore a mask, and that he participated in restraining the parents while one of the others snatched the sleeping child from her bed. On May 4, 2006, Phito Cajuste entered a guilty plea to one count of hostage-taking.

Defendant Merise was arrested in Haiti in February 2007. On or about February 27, 2007, two agents of the FBI interviewed Merise at the prison in Port au Prince, Haiti. Merise initially claimed he had been a lookout at the house, but then he admitted he was a full participant in the hostage-taking and that he entered the house with the other hostage-takers. Moreover, defendant Merise was identified by name by all three conspirators, Yves-Jean Louis, Ernso Louis and Phito Cajuste, as the man with whom they had committed the hostage-taking of the little girl. Both Ernso Louis and Cajuste had been acquainted with Merise for more than four years. Yves-Jean Louis had been acquainted with Merise for many years.

## II.  Victim Impact

The child victim, O.G., and her family have suffered serious and extensive psychological trauma as a result of this offense.  O.G., her parents and her siblings have completed victim impact statements that are attached hereto as Exhibits A-F.[3]

## III.  The Substantial Assistance of Defendant Phito Cajuste

Cajuste was the third of the four conspirators to be apprehended (having been identified by the first and second ones) and the third to enter a guilty plea.  When Cajuste confessed to the FBI at arrest on January 29, 2006, Merise's name was already known from coconspirators Yves Jean Louis and Ernso Louis, but Cajuste had fresher information on final fugitive Merise's whereabouts, since Cajuste had remained in Haiti as a fugitive several months longer than Yves Jean Louis and Ernso Louis.  Cajuste provided a source with good information on where to find Merise, but Merise ended up being arrested by chance just as the arrest was plan was nearing fruition.   Cajuste was prepared to testify against Merise, who eventually pled

Cajuste did not attempt to contest his rendition to the FBI in Haiti.  Upon arrival in the United States, he was assigned defense counsel.  Shortly after being provided with the facts and evidence, Cajuste indicated through counsel that he was interested in cooperating.  Prior to plea negotiations, Cajuste agreed to an "off-the-record" debriefing, which occurred on April 7, 2006, providing a detailed account of his participation in the crime and provided all the details he could concerning his coconspirators.  He also met with the FBI for debriefing on October 18, 2006.  We believe him to have been truthful.

On May 4, 2006, Phito Cajuste entered a guilty plea.  The combination of good luck and the

---

[3]  These statements are redacted to protect the identity of the child victim and her family.

background information supplied by Cajuste and his source (as well as information supplied by Yves Jean Louis and Ernso Louis), resulted in FBI being able to find and arrest Merise in February, 2007. Merise pleaded guilty on August 31, 2007. Specifically, Cajuste provided the FBI with a line of communication to a source who was in communication with Merise. This process continued in fits and starts over a number of months, with credible reports on Merise's whereabouts. Just as the authorities were closing in on a plan with the source to apprehend Merise, by chance Merise was arrested for disorderly conduct at a carnival party in early February, 2007. Merise was brought into the police station, where he was recognized from a photo that had been circulated by the HNP and FBI. The HNP alerted the FBI. Merise was subsequently brought to the United States and pleaded guilty as recounted above. Cajuste's information and readiness to testify against Merise substantially assisted the United States in the prosecution of Merise.

The government views the relative culpability and value of defendants Cajuste, Yves Jean Louis, and Ernso Louis to be roughly equivalent to each other. In terms of the roles of each of the defendants in the offense, as outlined above, Merise and Yves Jean Louis planned the hostage-taking, with Yves Jean Louis drawing on his inside information about the family. Merise and Yves Jean Louis recruited Cajuste and Ernso Louis to assist in the abduction. Merise and Ernso took the child to the remote location where she was held, where Ernso remained to care for her. Merise and Yves Jean Louis went there at times to check on Ernso and the child hostage. Merise and Cajuste made the ransom calls. When considering the roles of each, in conjunction with the degree of assistance to the government of Yves Jean Louis, Ernso Louis and Cajuste, it is the position of the government that there is little distinction. While Yves Jean Louis and Ernso Louis had slightly greater roles, they were also the first to enter guilty pleas and rendered the most assistance in the

prosecution of others. While Cajuste had a slightly more minor role, he entered his plea at a later date and rendered less assistance than Yves Jean Louis and Ernso Louis. Thus, the government does not recommend that the Court distinguish greatly among these three in the final balance.

## IV.  Motion and Recommendation

Based upon these facts and any additional facts presented at the sentencing hearing, pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, the United States hereby moves for a downward sentencing departure for defendant Phito Cajuste from the applicable sentencing guidelines range of 235-293 months. The United States has carefully considered the nature and extent of defendant's assistance and the limitations on it. The decision to file this motion for departure from the guidelines, represents the assessment by the United States of the overall nature of the assistance which defendant provided. Based on it's assessment the United States respectfully submits to the Court that a downward departure to Offense Level 35 (with a range of 168-210 months) would be appropriate. The government respectfully recommends that the defendant receive a sentence in the middle part of that range, that is to say a sentence of between 180-198 months.

WHEREFORE, the United States respectfully requests that this Court depart downward, as outlined above, based upon the defendant's substantial assistance to the United States.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. BAR NUMBER 498610

_____/s/_____
Jeanne M. Hauch
D.C. Bar Number 426585
National Security Section
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-5776 telephone
(202) 307-6059 facsimile
Jeanne.M.Hauch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by US Mail on counsel for the defendant:

Teresa Kleiman, Esq.
419 7th Street, N.W., Suite 210
Washington, D.C.  20004

on this _30th  day of November, 2007.

_____/s/_____
JEANNE M. HAUCH
Assistant United States Attorney

11