UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Docket No. 06-042-02 (JDB) |
| V. : | Sentencing: December 11, 2006 |
| : | |
| PHITO CAJUSTE | |

**MEMORANDUM IN AID OF SENTENCING**

Mr. Phito Cajuste , through undersigned counsel, respectfully submits the following information in aid of sentencing, pursuant to 18 U.S.C. 3553 (a) and with regard to the government's U.S.S.G. 5K1.1 motion for downward departure in the above-captioned matter.  Facts and information in support of Mr. Cajuste are as follows:

1.      On May 4, 2006, Phito Cajuste entered a plea of guilty before the Court to one count Hostage Taking of a United States Citizen, 18 U.S.C. 1203.  He accepted responsibility for his conduct and provided substantial assistance to the government. Sentencing is scheduled before the Court on December 11, 2007.

2.      The federal sentencing guidelines are effectively advisory.  <u>United States v. Booker</u>, 125 S.Ct. 738, 757 (U.S. 2005).  Under the factors enumerated in 18 U.S.C. 3553 (a) the Court may impose a sentence to ensure that the sentence is

sufficient but not greater than necessary to comply with the sentencing goals of 3553 (a)(2).  United States v. Booker , 125 S.Ct. at 757.

    3.    On November 30, 2007, the government filed a motion for downward departure based upon substantial assistance rendered by Mr. Cajuste. Mr. Cajuste agrees that he receives a three point reduction for acceptance of responsibility and that he is entitled to a downward sentencing departure from his sentencing guideline range based upon substantial assistance.  Consistent with the terms of the plea agreement, Mr. Cajuste provides the following information to assist the Court at his sentencing.

    4.    Mr.  Cajuste is a 26 year old young man who has lived in the Republic of Haiti all of his life.  His mother, Julia Bellange, lives in a tin roof house with an outside kitchen, no electricity, and no phone in a remote part of Haiti where she works as a street vendor.  His father, Exander Cajuste, sold mangoes on the streets until he died in 2004.   Mr. Cajuste has two younger sisters, Juliette Cajuste and Ketty Cajuste, and a younger brother, Franne Cajuste.  He has a young daughter, Leissa Guirlaine, who is five years old.

    5.    Mr. Cajuste left high school after two years because neither he nor his family could afford to pay for school.  He has always worked at whatever job he could find in order to help support his mother, siblings, and his child.  He has even worked without pay in order to secure the job with the hope of eventually being paid by his employer.

6.      The circumstances of the present offense indicate that Mr. Cajuste participated in a serious crime.  To say that he feels deep remorse for participating in the offense is an understatement.  He has frequently inquired about the child OG with great concern and has expressed disbelief that he could participate in such an offense especially when he has a young daughter of his own whom he loves and cherishes.  Mr. Cajuste has felt much guilt and despair over the pain he has caused to the child OG and her family.  He listened carefully through an interpreter, for over an hour, to each victim impact letter written by family members.

7.      Beneath a somewhat stoic and shy exterior, Mr. Cajuste is a genuinely warm, caring, and kind person.  His personality contrasts sharply with his conduct in this offense and suggests that his conduct was quite atypical and out of character.

8.      It must be said on Mr. Cajuste's behalf that he did not play a leadership role in the offense, did not plan or organize the offense, and did not recruit any other person to participate in the offense indicating that he had a more minor role.  Prior to September 26, 2005, the date of the offense, he had never been in the home of the family nor was he familiar with the neighborhood where the home was located.  He was not involved in prior surveillance of the home.  This information is not meant to excuse Mr. Cajuste' criminal conduct.  The

information is for the Court's consideration in determining the least sentence that is both appropriate to the offense and fair to Mr. Cajuste.

    9.    Mr. Cajuste did not know the family who were the victims in this case. He was recruited to participate in the offense by Leslie Merise and Ives Jean Louis. The fake gun came from Jean Marc, Ernzo Louis' brother-in-law. Mr. Cajuste knew that the gun used in the offense was fake. A machete was given to Mr. Cajuste by Leslie Merise, but Mr. Cajuste did not use or arm himself with the machete. When he entered the home, he put the machete down by steps at the door because he did not want anyone to get hurt.

    10.    Mr. Cajuste had minimal contact with the child OG as his role was to assist in subduing the parents after entry into the house. He did not physically handle the child, threaten her or otherwise mistreat her. After the abduction, Ernzo Louis and Leslie Merise remained with the child, and Mr. Cajuste and Ives Jean Louis left separately in a taxi cab. Leslie Merise paid for the cab as Mr. Cajuste' had no money. Mr. Cajuste did not know where Ernso Louis or Leslie Merise were taking the child, he did not go to the first location or second location where the child was held, nor had he ever been to either location. He was not aware of the physical conditions of the two locations and he was not familiar with the areas, indicating that he was not involved in prior planning or strategic decisions about locations, further supporting that he was not a leader or organizer in the offense..

11. Mr. Cajuste did not know that money, a watch, a wallet, and a pair of shoes had been taken from the home during the offense until after his arrest. This indicates that Mr. Cajuste was not privy to certain information possessed by other participants and further supports his more minor role.

12. Approximately two days after the offense, Leslie Merise came to Mr. Cajuste in order to make a ransom telephone call to the family. Mr. Merise had a cell telephone and dialed the family's number, but handed the cell telephone to Mr. Cajuste to make the ransom demand because he did not want the family to recognize his voice. That is the only ransom telephone call made by Mr. Cajuste. Mr. Cajuste was not involved in strategic decisions about what ransom amounts would be requested and what ransom amounts would be accepted, further indicating that he was not a leader or organizer in the details of the offense.

13. Mr. Cajuste interviewed with FBI agents in Haiti, and also debriefed with the government and FBI agents on April 7, 2006, and on October 18, 2006, regarding contacts, sources, and the possible whereabouts of Leslie Merise in Haiti. He provided detailed information to the FBI including, among other things, a physical description of Mr. Merise and Mr. Merise' nickname, a specific address and physical description of the place where Mr. Merise might be located, a second location where Mr. Merise sometimes stays, and a third location where Mr. Merise likes to hang out. He also provided the name of Leslie Merise' girlfriend, another

friend, and a third person - all of whom know Leslie Merise. At one debriefing, Mr. Cajuste made a telephone call on behalf of the FBI to a person in Haiti who could identify Leslie Merise and who agreed to notify the FBI if he saw Mr. Merise thereby establishing a future contact for investigators. In addition, Mr. Cajuste indicated to the government a willingness to testify against Leslie Merise should Mr. Merise proceed to trial.

14. The Court should also consider possible collateral consequences which Mr. Cajuste' conduct has brought upon himself and his family. Mr. Cajuste is concerned for the safety of his family in Haiti because criminal conduct by a family member often provokes retaliation on the family by the Haitian authorities. For the same reason, he is very apprehensive about his eventual return to Haiti. After he has served this Court's sentence, there may still be punishment to come.

15. Mr. Cajuste respectfully requests that the Court consider all this information in determining the least sentence that is both appropriate to the offense and fair to Mr. Cajuste.

Respectfully submitted,

_____
Teresa G. Kleiman  #445497
Counsel for Phito Cajuste

>503 D Street, N.W.
>Suite 340
>Washington, D.C.  20001
>(202) 638-0016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was faxed and mailed first class, postage prepaid to AUSA Jeanne M. Hauch, Office of the United States Attorney, 555 4th Street, N.W., Washington, D.C., 20530, on this ___ day of December, 2007.